## J. E. WELBORN *v.* ISAAC ANDERSON.

1. PRACTICE : INTRODUCTION OF EVIDENCE.—Parties are not restricted to any particular order in the introduction of their evidence, and hence in the trial of an action of ejectment, it will be error to exclude a deed properly executed and proven and conveying the premises in controversy, because it does not then appear that the grantor had any right to convey a title to the land.
2. STATUTE OF LIMITATIONS.: ADVERSE POSSESSION : COLOR OF TITLE.—Adverse possession of land, under color of title, for the period prescribed in the Statute of Limitations, constitutes a good bar to the recovery of the plaintiff, as to all the land embraced in the deed under which the defendant claims, though he may not have the whole inclosed ; therefore, when the defendant relies on the statute, he may introduce in evidence a deed from a person who does not appear to have had any title to the land, both to show the character of his

possession, and also to extend it to the whole land embraced in the deed, and beyond his actual occupancy.

3. SAME: SAME: VOID DEED COLOR TITLE.—A void deed will constitute color of title.

4. SAME: COLOR OF TITLE NOT ESSENTIAL.—A mere intruder, who enters and holds land, without color of title, for the period prescribed by the Statute of Limitations, may rely upon the statute to the extent of his actual occupation and inclosure, but no further. See *Proprietors of Kennebeck Purchase* v. *Springer*, 4 Mass. 416 ; *Grafton* v. *Grafton*, 8 S. & M. 77 ; *Drayton* v. *Marshall*, 1 Rice Eq. R. 373.

5. SAME: MAINTENANCE A QUESTION FOR THE JURY : EXCLUSION OF DEED FOR: ERROR.—The question, whether a deed is void for maintenance, is to be determined by the jury, and not by the court; and hence it will be error for the court to exclude a deed offered in evidence upon the ground that the proof shows that it was made when the land was held adversely to the grantor.

ERROR to the Circuit Court of Jones county.   Hon. William M. Hancock, judge.

On the 31st of March, 1855, the defendant in error, Isaac Anderson, commenced this action of ejectment against the plaintiff in error, Joel E. Welborn, to recover possession of the northwest quarter of northeast quarter of section 3, township 7 north, of range 12 east, lying in Jones county.

The defendant pleaded:

1st. The general issue.

2d. That he, and those under whom he claimed, had been in the actual uninterrupted adverse possession of the premises, claiming title, under regular conveyance, for the period of ten years next before the commencement of the action.

3d. That the plaintiff's right of action did not accrue within seven years next before the commencement of the suit.

Issues were taken on these pleas, and the cause submitted to a jury.

On the trial, the plaintiff below read in evidence a patent from the United States, conveying the land claimed in the declaration, to Allen Anderson, and then a deed from said Anderson to himself for the same land.

The plaintiff then introduced as a witness, Neill F. McGill, the county surveyor of Jones county, who testified as follows: That he knew the lines of the land in controversy ; that the defendant was

in possession of a part of said land at the commencement of the suit; that the north and south line, on the east side of said tract (mentioned in the patent), included about twenty feet of defendant's dwelling-house, and a portion of his stable and farm lot; that the plaintiff (Anderson) was in possession of all of said lands, and had been so possessed since the year 1835; that plaintiff had a gin-house and some improvements on it, also a portion of his dwelling and negro house, but that part in possession of defendant was never inclosed by plaintiff. Witness further stated, that a short time before the commencement of this suit, he run the north and south line, before referred to, between the town of Ellisville and the land sued for; that it was an open unmarked line; that the section (of which it was a fractional part) was a large one, containing 682 $\frac{24}{100}$ acres; that the defendant had notice of this survey; that in making the survey, witness commenced at the northwest corner of the section; that there was no corner-post standing there, and that he ascertained the starting-point by "finding out where the two lines crossed, and by information from others."

On cross-examination, this witness stated: That he had made a survey of lot No. 12, on the plat of the town of Ellisville; that said lot, according to the plat and survey of said town, contained all the improvements of defendant, and extended over the line as run by witness between the town and the land described in the patent, thirty-two feet.

The plaintiff here closed.

The defendant then, to prove title and to show color of title, offered in evidence a deed from James Parker to him, for the said lot No. 12, and dated 15th of July, 1852. This deed, upon the objection of the plaintiff, was excluded as evidence, upon the following grounds:

1st. "Because plaintiff had shown a regular title from the United States down, and that, from the proofs, Parker was not in possession when the deed was made, and it was therefore void.

2d. "Because, under the plea of the Statute of Limitations of seven years, this writ showed possession for less time than that described in the complaint."

The defendant then offered in evidence, for the same purpose as before, a deed made by D. N. Carlile, president of the board of

police of Jones county, conveying said lot No. 12 to Joel E. Welborn. The deed was dated 11th of November, 1844.

This deed was excluded for the same reasons as the Parker deed; and further, because "the defendant had offered the deed from Parker as the predicate of title and color of title, and he could not shift his answer of defence, and show title and color of title from another source; and because there was no evidence that the president of the board of police had a right to make said deed; and because Anderson was then in possession, holding adversely."

The defendant then, for the same purpose as before stated, offered in evidence a deed from Joel E. Welborn to said James Parker, for said lot No. 12, and dated 26th January, 1847.

This deed was excluded for the "same reasons as the other two deeds."

The defendant offered to read in evidence an order made by the board of police of Jones county, in April, 1844, by which the title of the county to the lots in Ellisville, lying in the public square, and not heretofore conveyed by commissioners and trustees, was directed to be made to the president of the board and his successors in office.

To the reading of this order the plaintiff objected, because "the deeds had been ruled out, and it was irrelevant, and did not show title or color of title." These objections were sustained.

The defendant then offered to prove, by parol evidence, "actual, continuous, and adverse possession of said lot No. 12, from the date of Carlile's deed to Welborn, in 1844, to the time of the commencement of this suit." This evidence was objected to, "because there was no evidence that the defendant entered or held under color of title," and this objection was sustained.

The defendant then introduced evidence which tended to show, that when the lots in Ellisville were laid off and surveyed, that the boundary line between lot No. 12 and the land mentioned in the patent, was established, as shown in the plat of the town, by the direction and consent of the plaintiff.

The above was all the evidence.

The defendant excepted at the time to all the rulings of the court excluding evidence offered by him.

It is unnecessary to set out the instructions more than to say,

that in the charge given the principles of law indicated by the rulings of the court on the evidence were laid down.

The verdict was for the plaintiff, and defendant moved for a new trial, which was refused, and final judgment rendered against the defendant, to reverse which this writ of error is prosecuted.

*T. J. Wharton,* for plaintiff in error.

*George Wood,* contra.

SMITH, C. J., delivered the opinion of the court.

This suit was brought in the Circuit Court of Jones county, by the defendant in error, to recover the possession of a certain tract of land. The defendant pleaded first the general issue; second, that he and those under whom he claimed had been in the actual, adverse, and uninterrupted possession of the premises, claiming to be the owner of the same, under regular conveyances, for the period of ten years next before the commencement of the suit; and third, that the plaintiff's right of action did not accrue within seven years next preceding the institution of the suit. The cause having been submitted to a jury, a verdict was found for the plaintiff; whereupon the defendant moved for a new trial, which being refused, he excepted, and prosecutes this writ of error.

On the trial, the defendant in error offered in evidence and read to the jury a patent from the Government of the United States, conveying the northwest quarter of the northeast quarter of section No. 3, of township No. 7, of range No. 12 west, to Allen Anderson; and a deed, duly executed, by the said Anderson and his wife Mahala, conveying the same land to himself. He then offered a witness, who testified that he knew the lines of the land in controversy; that the defendant was in possession of a part of the land at the commencement of the suit; that the north and south line on the east side of the land embraced by the patent included about twenty feet of the defendant's dwelling-house, and a portion of his stable and farm lot; that plaintiff was and had been in possession of all of said lands since about 1835. The plaintiff had a gin-house and some improvements on it; also a portion of his dwelling and negro houses, (but) that the part in possession of the defendant was

never inclosed by the plaintiff; that the line was an unmarked open line; and that in running it he commenced at the northwest corner of the section, which was a large one, containing 682 $\frac{24}{100}$ acres; that there was no corner-post standing, and that he ascertained the starting-point by finding where the two lines crossed, and by information of others. This witness, on cross-examination, proved also that he had made a survey of lot No. 12, on the plat of the town of Ellisville; that said lot, according to the plat and survey of said town, contained the entire improvements of the defendant; and that it extended over the line, as run by him, between the said town and the plaintiff's land, as described in the patent, about thirty-two feet.

This was all the evidence material to be considered, which was offered by the plaintiff.

The defendant then offered to read as evidence a deed executed on the 15th of July, 1852, by James Parker, which purported to be a conveyance in fee of lot No. 12, in the town of Ellisville, from the said Parker to the defendant. The deed was offered as evidence of defendant's title, and also to characterize the possession, alleged to have been held by him of the land in controversy. The deed was excluded, upon the objection of the plaintiff, and the defendant excepted.

The defendant next offered to read a deed, executed November 11th, 1844, by David N. Carlile, the president of the board of police of Jones county, purporting to be a conveyance in fee of certain lots in the town of Ellisville, including the said lot No. 12, from the said Carlile, as president of the board of police, to one Joel E. Welborn. He also offered to read as evidence, from the minutes of the said board, an order directing that the title to the town lands belonging to the county of Jones, lying around the public square of Ellisville, not theretofore made by the commissioner or trustee, be made to the president of the board of police and his successors in office, &c.; which were objected to by the plaintiff. His objection was sustained, and the defendant excepted.

The defendant offered then, a deed bearing date the 26th of January, 1847, executed by the said Joel E. Welborn, duly proved and recorded, conveying a number of lots in Ellisville, amongst

which was included the aforesaid lot No. 12, to the said James Parker. This deed was also, upon the plaintiff's motion, excluded, and the defendant excepted.

Parol evidence was then offered to prove that defendant and those under whom he claimed had held actual, continued, and adverse possession of lot No. 12, from the date of Carlile's deed to said Welborn, down to the commencement of this action. This evidence was also ruled out, and the defendant again excepted.

Additional evidence was adduced by the defendant, but which it is not material to notice, as no exception is taken to the verdict, on the ground of the insufficiency of the evidence to sustain it.

The exceptions taken to the judgment in this case apply to the action of the court in excluding the evidence for the defendant as above stated.

First it is insisted that the court erred in ruling out the deed purporting to be a conveyance of certain land, including lot No. 12 in the town of Ellisville, from James Parker to the defendant. This lot, at least that part of it which was supposed to lie within the boundaries of the patent from the Government to Allen Anderson, was the subject-matter of the suit.

This exception is, manifestly, well taken. The reasons assigned for the exclusion of this deed are plainly erroneous. If the defendant relied upon a paper title, the deed from James Parker was an indispensable link in the chain of title. He may, from aught which the court could then know, have claimed under a conveyance from the original patentee of prior date to the deed from him to the plaintiff. The defendant was not restricted to any particular order in the introduction of his evidence. The deed was clearly, therefore, competent evidence, as the court could not, in advance of any evidence adduced by the defendant in reference to the subject, determine that the deed was invalid upon the assumption that the land of which it purported to be a conveyance, was held adversely to the grantor.

Again, under the issues joined between the parties, Parker's deed to the defendant was proper evidence to explain the nature and character of the alleged possession relied on as vesting an absolute title in the defendant, or as barring the right of entry in the plaintiff. It served to show the *quo animo* with which the de-

fendant had taken and held possession of the premises in dispute. And it was perfectly immaterial, in this view, whether the adverse possession claimed under Parker's deed, had or had not continued for a period sufficient to bar the plaintiff's right of entry. He based his defence not only upon his own adverse possession, but upon the adverse possession of those under whom he claimed.

Secondly : it is contended that there was error in excluding the deed from the president of the board of police to Joel E. Welborn ; the order from the minutes of the board, directing that the title to the unsold lands, belonging to the county and lying around the public square in Ellisville, should be made to the president of the board and his successors in office; and the deed from said Welborn to Parker.

The deed from the president of the poard of police was ruled out, for the reason that it did not appear that he had authority to make the conveyance ; and for the following reasons also, which were likewise grounds of objection to Welborn's deed; to wit, that the defendant having offered the deed from Parker to himself as the foundation of his title, and as constituting color or claim of title, was not to be permitted to depend upon a title, or to show color of title, derived from any other source. And also that said deeds were void, having been executed while the land was in the adverse possession of the plaintiff.

In deciding upon the competency of the deed from the president of the board of police as evidence in the cause, it is not material to determine whether that instrument was valid or invalid. It was in proper form, duly executed and recorded, and purported to convey the fee. Under the issues joined between the parties, it was perfectly immaterial whether or not the president had the legal authority to make the conveyance. According to all the authorities, that deed, as well as the deed from Welborn to Parker, constituted a colorable title. And it is settled that an adverse possession for the time limited under a claim or color of title, merely void, is a bar to a recovery under an elder title by deed. *Thomas* v. *Jackson*, 16 John, 293; *Jackson* v. *Wheat*, 18 Ib. 40 ; Ib. 365 ; *Ewing* v. *Burnitt*, 8 Peters, 41 ; 7 Wheat R. 355 ; *Brashear* v. *Hewitt*, 4 Harr. & McHenry, 222; *La Frombois* v. *Jackson*, 8 Cow. R. 539.

Welborn *v.* Anderson.

The second reason assigned for excluding both of the deeds, requires no comment. And the third ground on which the court proceeded in ruling them out is clearly erroneous and untenable. The question whether these deeds were executed while the plaintiff was in the adverse possession of the land, which they affected to convey, was a question of fact which the court was incompetent to decide. But if it were conceded that the assumed adverse possession of the plaintiff at the date of the execution of the deeds was a matter which the court had a right to determine, its action was none the less erroneous. At the stage of the examination when the deeds were ruled out, upon the ground that the plaintiff was in the adverse possession when they were executed, the defendant had offered no evidence in respect to his possession. It was hence impossible for the court to determine the question, unless, disregarding the rights of the defendants, it based its decision exclusively upon the plaintiff's evidence. It is scarcely necessary to add that in any view which can be taken of the subject, this action of the court is incapable of justification.

Thirdly: it is insisted that there was error in rejecting the evidence offered to prove continued adverse possession in the defendant, from the date of Carlile's deed down to the commencement of the suit.

It is manifest that in excluding this evidence, the court proceeded upon the principle that color of title was essential to the protection of the defendant's possession. In other words, that within the meaning of the statute, no possession can be adverse, unless taken and held under a colorable title.

It is well settled that when a party enters into possession under a colorable title, and holds adversely, that his possession is construed to be coextensive with the premises, as described in the deed or will under which he claims, and which he believes gives him a sound title. The rule is different in regard to a mere intruder. Reason and authority unite in confirming his possession to the land actually in occupation. "When a man, not claiming any right or title to the land, enters upon it, he acquires no seisin but by the ouster of him who was seised; and to constitute an ouster of him who was seised, the disseisor must have the actual and exclusive occupation of the land, claiming to hold it against him who was seised." *Pro-*

*prietors of Kennebeck Purchase* v. *Springer*, 4 Mass. R. 416. But without doubt the possession of a mere intruder will be protected to the extent of his actual occupation. *Grafton* v. *Grafton*, 8 S. & M. 77. "It is believed," says Chancellor Harper, "that no case can be put in which a private individual knows that another person claims, and is in the actual enjoyment of land, which belongs to him, and neglects to prosecute his right at law, *where there is nothing to prevent* his doing so, that he will not be barred by the Statute of Limitations." *Drayton* v. *Marshall*, 1 Rice Eq. Rep. 373. If, therefore, the defendant was in the actual occupation of lot No. 12, the premises in question, claiming title, and holding it adversely to the plaintiff, and such occupation was continued in him, or those under whom he claimed, for the requisite period, his defence was complete. The evidence offered was intended to prove these facts; it is hence manifest that there was error in excluding it.

Judgment reversed, and cause remanded for a new trial.